Dorothy Bolf, Plaintiff, v. Jeff D. Wise, d/b/a Superior Catering, Defendant, Third-Party Plaintiff-Appellant, and Pickering Sheet Metal, Inc., a Foreign Corporation, Third-Party Defendant-Appellee.

Gen. No. 69–125.

Second District.

February 5, 1970.

O'Brien, Burnell, Puckett and Barnett, of Aurora, for appellant.

Matthews, Jordan, Dean and Suhler, of Aurora, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

Dorothy Bolf, the plaintiff, filed suit against Jeff D. Wise, doing business as Superior Catering, the defendant, for injuries she allegedly sustained when the overhead door of the defendant's catering truck fell on her. Wise answered, and also filed a third-party complaint against Pickering Sheet Metal, Inc., stating that it was the manufacturer and seller of the truck; that the alleged injury to the plaintiff was caused by the active negligence of Pickering; and that Wise was entitled to indemnity from Pickering on the basis of its active negligence or breach of warranties, or under the theory of strict liability.

Pickering entered a special appearance and filed a motion to strike the third-party complaint on the grounds that it was not subject to the jurisdiction of the court in that it did not have sufficient contacts under section 17 of the Civil Practice Act (Ill Rev Stats 1967, c 110, par 17) to have submitted thereto. The trial court sustained this contention, and dismissed the third-party complaint. Wise perfected this appeal and here contends that the pleadings establish that Pickering was subject to the jurisdiction of the Illinois courts in this litigation.

The third-party complaint alleged that Pickering, a California corporation, manufactured and sold the truck in question to Wise, directly or through its dealer, Supreme Catering of Chicago, knowing it was to be used by Wise in Illinois. George Brickman, Vice-President of Pickering, executed an affidavit in support of its motion which stated that Pickering is a California corporation with its only place of business in Los Angeles, California; that it is engaged in the manufacture of special truck bodies for the use of caterers; that it does not own or control any sales outlets in Illinois, but makes its distribution by selling directly to independent contractors who, in turn, resell to caterers; and that

the truck in question was sold to Superior Catering Company of Chicago for the purpose of resale by them.

 Our "long arm" statute, sections 16 and 17 of the Civil Practice Act, subjects a person to the jurisdiction of Illinois courts if, among other things, he either transacts any business within this State or commits a tortious act therein. (Ill Rev Stats 1967, c 110, pars 16, 17(1)(a), (b)). Sections 16 and 17 reflect a conscious purpose to set forth the "minimal contacts" necessary to satisfy the requirements of due process in imposing jurisdiction, having the force and effect of personal service of summons within this State, over a nonresident defendant. Nelson v. Miller, 11 Ill2d 378, 389, 143 NE2d 673 (1957); Keats v. Cates, 100 Ill App 2d 177, 186, 187, 241 NE2d 645 (1968). In order for a tortious act to subject a nonresident manufacturer to the jurisdiction of an Illinois court, it is necessary that the act cause an injury, and that the injury occur within this State. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill2d 432, 176 NE2d 761 (1961). The incidents of contact with this State, in a case based upon the transaction of business, are not tested by any stricter standard than those in which jurisdiction is obtained by reason of a tortious act. Ziegler v. Hodges, 80 Ill App2d 210, 215, 224 NE2d 12 (1967).

We believe that Gray, supra, is determinative of the issue before us. In Gray, the plaintiff brought suit against Titan Valve Manufacturing Company, and others, for injuries she sustained in Illinois when a water heater exploded. Titan claimed that its only connection with the case was that it sold completed valves to American Radiator & Standard Sanitary Corporation, outside of Illinois; and that American, also a defendant, then assembled the water heater and sold and shipped it into Illinois. Titan stated it did no business and had no agents in Illinois.

In Gray, at page 436, the court held that the "tortious act" as used in section 17 of the Civil Practice Act occurs where the injury takes place. It then pointed out that in order to obtain a binding judgment against one not served with process within the State, there must be certain minimum contacts with the State and a reasonable method of notification. Titan claimed it did not have sufficient minimum contacts with the State. The record did not disclose whether Titan had done any other business in Illinois, either directly or indirectly; it only disclosed that Titan's valve was manufactured in Ohio, incorporated in a hot water heater in Pennsylvania by American, and in the course of commerce, the water heater was sold to a consumer by another entity in Illinois, where the injury occurred. The Supreme Court rejected the contention that a given volume of business is the only way in which a nonresident can become subject to the jurisdiction of the courts of this State, and stated at page 438: "Since the International Shoe case was decided the requirements for jurisdiction have been further relaxed, so that at the present time it is sufficient if the act or transaction itself has a substantial connection with the State of the forum."

■■ The Supreme Court recognized that commercial transactions today touch a number of states. Manufacturers often, if not customarily, distribute their products in the chain of commerce through a number of middlemen, sometimes independent and sometimes not. Such circumstance is not critical in determining whether a manufacturer may be subject to the jurisdiction of the court. Where there is no claim by a manufacturer that the ultimate sale or use of its product within this State is an isolated or exceptional case, it is reasonable to assume that its commercial transactions result in substantial use and consumption within this State. To this extent, such manufacturer has derived a bene-

fit, albeit indirect, from the laws of this State. "As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." Gray v. American Radiator & Standard Sanitary Corp., supra, 442.

The facts in Gray closely parallel those in this case. Admittedly, Pickering sold its completed product to a Chicago distributor for resale by it. It obviously contemplated resale in Illinois to an ultimate consumer by its Chicago distributor. The connection or contacts with this State are even more apparent than in Gray, where the manufacturer of the valve—a component part of the assembled product—was held subject to the jurisdiction of the court in connection with an injury caused by the product after it reached the ultimate consumer in this State.

The courts of the forum in which Pickering is located have treated this question similarly, and have held that the determination of whether there have been sufficient minimal contacts to justify imposing jurisdiction over a nonresident manufacturer depends upon "commercial actuality" or "economic reality," and not mechanical tests. If an injury is suffered from a product, which was sold or used within the state, and such sale or use generates gross income for the manufacturer, and the generation of such income is not so fortuitous or unforeseeable as to negative the existence of an intent on the manufacturer's part to bring about such a result, then a manufacturer has engaged in economic activity sufficient to justify the imposition of jurisdiction over it. Buckeye Boiler Co. v. Superior Court of Los Angeles County, — Cal2d —, 80 Cal Rptr 113, 120, 458 P2d 57 (1969). Also see: Annotation 19 ALR 3d 13.

Jurisdictional limitations are imposed to provide a standard of fairness and reasonableness with ref-

erence to when and where one may be required to defend a legal action. The action in the case at bar is based upon an injury suffered by the plaintiff in this State. The substantive rights of the litigants will be governed by the laws of this State; and witnesses, on the issues of injury, damages and many of the other elements relating to the occurrence, are Illinois oriented. By virtue of all of these circumstances, the courts of the place of injury usually provide the most convenient forum for the trial.

The defendant, Wise, claims to have been drawn into the litigation by reason of a defective door which was fabricated by Pickering. There are compelling reasons why Wise should be permitted to have this determination made in the principal action, and not be compelled to later sue Pickering in California in the event a judgment is entered against him.

When a foreign manufacturer's product causes injury in this State under circumstances such that it is apparent that he knowingly sold or intended the sale or use of the product within this State, or that this was not unforeseeable or the result of a mere fortuitous use, then it is not unreasonable to hold the manufacturer answerable in this State for any damages resulting from the product on the basis of having committed a tortious act within the State (Gray v. American Radiator & Standard Sanitary Corp., supra), or because of having transacted business within the State (Buckeye Boiler Co. v. Superior Court of Los Angeles County, supra).

Pickering's sale to the Chicago distributor, with the ultimate resale, use and injury in Illinois, seems to us to clearly subject it to the personal jurisdiction of the Court, and it was error to dismiss the third-party complaint. Inasmuch as the trial court dismissed the third-party complaint in this case, the judgment is reversed

210

and the cause is remanded to the Circuit Court of Kane County with directions to deny the motion to dismiss and for further proceedings in conformity with this opinion.

Reversed and remanded with directions.

ABRAHAMSON and MORAN, JJ., concur.