STATE of Missouri ex rel. BIRDSBORO CORPORATION, a Corporation, Relator,

v.

The Honorable William H. KIMBERLIN, Judge of the Fifth Judicial Circuit, Clinton County, Missouri, Respondent.

No. 25458.

Kansas City Court of Appeals, Missouri.

Dec. 7, 1970.

George L. Gisler, Kansas City, for relator.

, O. W. Watkins, Jr., of Strop, Watkins, Roberts & Hale, St. Joseph, for respondent.

## ORIGINAL PROCEEDINGS IN PROHIBITION

MAUGHMER, Commissioner.

Relator Birdsboro Corporation (a Pennsylvania corporation) was sued for damages in the circuit court of Clinton County, Missouri. There was personal service in Pennsylvania under the Missouri "long arm" statute (Sections 506.500 and 506.510, V.A.M.S.). Relator appeared specially, filed its motion to quash the service of summons, which was denied, and then sought a writ of prohibition in this court. We issued our preliminary writ staying the respondent circuit judge from exercising further jurisdiction. It must now be determined if the writ should be made absolute or should be quashed.

The lawsuit out of which this cause arose was filed by the Clinton County Reorganized School District, R–1, Cameron, Missouri, as party plaintiff. It claimed damages because of "Mirawal Spandrel panels" which allegedly were defectively constructed and improperly installed in a new school building which was being constructed for the district.

The plaintiff school district's petition alleged that the "defendant Mirawal Division, Birdsboro Corporation, manufactured and supplied for use in the construction of the aforementioned school building certain Spandrel panels known as their 'custom Miraspan panel' and carelessly and negligently designed and constructed the said Miraspan panels, leaving a product which, although represented to be an exterior facing, was unsuitable for exposure to the elements." Also named as defendants were Frangkiser & Hutchens, architects, under a charge of "negligently and carelessly" designing the building by specifying "Mirawal Spandrel panels" for a portion of the curtain wall; Ceco Corporation, subcontractor, which had contracted to "manufacture and install" the curtain wall portion, and F. P. Gehring, Inc., general overall contractor. The pleading does not relieve Relator of responsibility nor shift potential legal liability from it to any one or all of the other named defendants. The school building was constructed during 1963. The petition generally alleged that the panels in 1966 "became chipped, cracked, blistered and discolored," all as a result of the negligence of the Relator (and the other named defendants) and that plaintiff will be required to repair and replace the panels, all to its damage in the amount of $15,000.00.

In its motion to quash service of summons, Relator stated that it was a Pennsylvania corporation, not authorized to do business in Missouri, and had not transacted any business in Missouri; that plaintiff's alleged cause of action did not arise

from a contract made in Missouri by this defendant, nor did it arise from the transaction of any business in the State of Missouri by Birdsboro. Relator also filed in the circuit court and incorporated in its brief here as Exhibit C, an affidavit dated March 27, 1969, by one William J. Remley, Jr., who therein stated that at the time of the events related in plaintiff's petition he was general sales manager of Mirawal Company, a division of Birdsboro Corporation; that on January 15, 1963, Mirawal Company, from its office in Port Carbon, Pennsylvania, "rendered a proposal" to Ceco Steel Products Corporation, Chicago, Illinois, with respect to Spandrel panels, as referred to in plaintiff's complaint; that on or about February 15, 1963, Mirawal Company received at its offices in Port Carbon, Pennsylvania, "a purchase order with respect to said panels" from Ceco Corporation, Chicago, Illinois; that on or about February 1, 1963, and March 20, 1963, it received at its Port Carbon, Pennsylvania office, letters from Ceco which "specified details of the panels to be purchased by Ceco"; that on March 21, 1963, receipt of the order was acknowledged, and on March 28, 1963, the panels were shipped in interstate commerce to F. P. Gehring, Inc., Cameron, Missouri, with the invoices going to Ceco, Inc., in Chicago, but at no time was there any correspondence to or from the State of Missouri. The record contains no evidence from which it might be concluded that Birdsboro ever did any other business in Missouri. Summons, with a copy of the petition, was served on Relator at its offices in Pennsylvania.

In support of its contention that the writ of prohibition should be made absolute, Relator says the burden is on plaintiff to show that it is entitled to service on Relator under Section 506.500, V.A.M.S., which is the statutory authority under which plaintiff says it was entitled to the process. Relator says that plaintiff's petition does not state a cause of action against Relator, does not allege "a tortious act" which is the basis of plaintiff's claim, but that plaintiff's petition states only conclusions, whereas facts must be pleaded, as required by Section 509.050, V.A.M.S., which provides that a petition "shall contain a short and plain statement of the facts * * *." Relator also says that to allow service in this manner would constitute a denial of due process under the Fourteenth Amendment to the Constitution of the United States and under Article I of Section 10 of the Constitution of Missouri, V.A.M.S.

In support of its contention that plaintiff's petition states conclusions and not facts, and therefore does not state a cause of action against Relator, our attention is invited to Schide v. Gottschick et al., 329 Mo. 64, 43 S.W.2d 777, where the defendant pleaded contributory negligence with a mere general allegation of contributory negligence and carelessness, without specifying the facts which the pleader was asserting constituted contributory negligence. On appeal the court said that a litigant, when pleading and asserting contributory negligence, should set forth the facts with sufficient certainty to point out what specific behavior was referred to, but nevertheless the appellate court allowed a contributory negligence instruction to stand since the pleading had not been attacked before judgment and there had been no objection to the offer of evidence on contributory negligence during the trial. Relator also cites Kirkland v. Bixby et al., 282 Mo. 462, 222 S.W. 462, where defendant railroad in a crossing case, was charged with negligence in failing to ring a bell and sound a whistle at frequent intervals. Here the instruction was criticized because there was no showing of any duty based upon either statutory requirement or custom. We do not believe that either of these cases uphold Relator's contention. In any event it has long been ruled in Missouri that a general allegation of negligence is sufficient in the absence of a motion to make more definite and certain. In Maybach v. Falstaff Brewing Corporation et al., 359 Mo. 446, 222 S.W.2d 87, the allega-

tion was general negligence. Our Supreme Court stated the rule this way, l. c. 92:

"The petition states a claim upon which relief may be granted. It is undoubtedly good as against the attack which appellant made after verdict, and we think it is sufficient even had the attack been more timely. A plaintiff should allege facts sufficient to inform the defendant of the breach of duty with which he is charged and, if the facts are within the plaintiff's knowledge, he should be required to state them with reasonble particularity. *Negligence, however, is an ultimate fact which may be pleaded as such, and not a conclusion. * * *"* (Italics ours.)

The Maybach ruling on this point was affirmed by the Supreme Court in the recent case of Plato Reorganized School District No. R–5 v. Intercounty Electric Co-op. Ass'n, Mo., 425 S.W.2d 914. There the allegation was general negligence. The court said that that charge was good against a motion to dismiss for failure to state a claim and cited the Maybach case as authority. We deny the Relator's contention that its motion to quash should have been sustained because plaintiff's petition alleged only general negligence.

■ Relator's additional and main point is that plaintiff is not entitled to have service under Section 506.500, supra, because there is no effective allegation of negligence, no proper allegation of the commission of a tortious act, and that allowance of such service would deny Relator due process under both the federal and state constitutions.

Section 506.500, V.A.M.S., provides that "Any person or firm, * * * or any corporation, * * * submits such person, * * * or corporation, * * * to the jurisdiction of the courts of this state * * *" if it does any one of five listed acts. Plaintiff here relies upon the act listed number (3) in the statute, which is "The commission of a tortious act

* * *." Section 506.500, V.A.M.S., then authorizes service by a court officer in a foreign state (as was done here).

The legal question raised here by Relator, especially on due process as applied to extended jurisdiction, goes back almost a century at least to Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, decided in 1878, and has certainly been considered, and often discussed, by almost every appellate court, state and federal, in the country. We do not believe it is necessary for us to review and treat the subject extensively or in detail and review decisions from numerous foreign jurisdictions. We shall examine and quote from only a few opinions—those which we believe express the logic, announce the conclusions and are decisive as to the case at bar. However, the opinions which we discuss, including the references contained therein, will open the door wide and furnish numerous leads, for either the student or practicing lawyer, who desires to pursue the subject in extenso.

Section 506.500, supra, and the related Missouri statutes were adopted, not only with an awareness of the similar Illinois statutes, but with a conscious desire to emulate as to phraseology and purpose. Our Supreme Court in Scheidegger v. Greene, 451 S.W.2d 135, 139, said this:

"Although not a matter of record both parties refer to an article by Senator William B. Waters, Majority Floor Leader of the Missouri Senate at the time of the enactment of these sections, in which he stated that 'This law was represented as being virtually identical to a similar law adopted by the State of Illinois which, it is said, has been held to be constitutional.' 23 Journal of The Missouri Bar, 1967, 452 l. c. 455. * * *"

We believe that two recent decisions, one by the Supreme Court of Illinois and one by the Supreme Court of Missouri, are decisive as to the issues before us, and binding upon this court. In Gray v. American Radiator & Standard Sanitary Corporation et al., 22 Ill.2d 432, 176 N.E.2d 761, the

plaintiff, a resident of Illinois, filed suit in the State of Illinois, and alleged that the Titan Valve Manufacturing Company, an Ohio corporation, had "negligently constructed the safety valve" on a water heater, which resulted in an explosion and injuries to plaintiff. Titan Corporation appeared specially and filed a motion to quash service on the ground it had not committed a tortious act in Illinois. Its affidavit stated it did no business there; that it had no agent physically present in Illinois; that it sells and sold the completed valve to American Radiator & Standard Sanitary Corporation outside the State of Illinois. The service against Titan was personal in Cleveland, Ohio, and under the Illinois Statute from which ours (Section 506.500, V.A.M.S.) was copied, and on the assertion that Titan had "committed a tortious act" in Illinois. The facts in the Gray case are at least almost identical with ours. There is an allegation of negligent manufacture and construction in a foreign state, sale to a foreign corporation, with the product in the course of commerce, sold to an Illinois consumer (in our case Relator knew it was for use in Missouri and shipped the product directly to Cameron, Missouri) and personal service in a foreign state. The trial court sustained Titan's motion to quash the service and dismissed the action. The Supreme Court of Illinois reversed and remanded with directions to deny the motion. We quote pertinent and revealing excerpts from the opinion:

"Under modern doctrine the power of a State court to enter a binding judgment against one not served with process within the State depends upon two questions: first, whether he has certain minimum contacts with the State (see International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, 102), and second, whether there has been a reasonable method of notification. * * *"

* * * * * *

"In the case at bar the defendant's only contact with this State is found in the fact that a product manufactured in Ohio was incorporated in Pennsylvania, into a hot water heater which in the course of commerce was sold to an Illinois consumer. The record fails to disclose whether defendant has done any other business in Illinois, either directly or indirectly; and it is argued, in reliance on the International Shoe test, that since a course of business here has not been shown there are no 'minimum contacts' sufficient to support jurisdiction. We do not think, however, that doing a given volume of business is the only way in which a nonresident can form the required connection with this State. Since the International Shoe case was decided the requirements for jurisdiction have been further relaxed, so that at the present time it is sufficient if the act or transaction itself has a substantial connection with the State of the forum."

The opinion then refers to Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 666, and said:

"* * * A Vermont statute provided for such substituted service on foreign corporations committing a tort in Vermont against a resident of Vermont. In holding that the statute affords due process of law, the court discussed the principal authorities on the question and concluded, *inter alia*, that 'continuous activity within the state is not necessary as a prerequisite to jurisdiction.'"

* * * * * *

"* * * As the Vermont court recognized the Smyth case, the trend in defining due process of law is away from the emphasis on territorial limitations and toward emphasis on providing adequate notice and opportunity to be heard: from the court with immediate power over the defendant, toward the court in which both parties can most conveniently settle their dispute."

\* \* \* \* \* \*

"\* \* \* Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State."

\* \* \* \* \* \*

"The principles of due process relevant to the issue in this case support jurisdiction in the court where both parties can most conveniently settle their dispute. The facts show that the plaintiff, an Illinois resident, was injured in Illinois. The law of Illinois will govern the substantive questions, and witnesses on the issues of injury, damages and other elements relating to the occurrence are most likely to be found here. Under such circumstances the courts of the place of injury usually provide the most convenient forum for trial. \* \* \*"

We now consider the opinion of the Supreme Court of Missouri in State ex rel. Deere and Company v. Pinnell, 454 S.W.2d 889. In this case plaintiff sued two foreign corporations for injuries allegedly sustained when a nonvented gas tank blew and threw gasoline on him, resulting in injuries. The petition alleged that injuries were caused by the defendant's having negligently manufactured the gas cap without a vent and selling the same in a "national channel of commerce". The named defendants Deere and Company, a Delaware corporation, and John Deere of Moline, Illinois, an Illinois corporation, as Relators, petitioned for a writ of prohibition to prohibit the circuit court from exercising jurisdiction based upon the provisions of Section 506.500, supra. As in our case and as in Gray, in the Illinois case, personal service was had outside the state and the foreign defendant corporation sought dismissal for the same reasons as in our case. Our Supreme Court as in the case at bar, issued the preliminary writ, but upon full consideration, vacated the same, holding that the service based upon the allegations of the petition, was valid under Section 506.500, supra. Specifically, the issue immediately before the court in Pinnell was "whether or not relators may be compelled to answer interrogatories concerning their contacts with the State of Missouri and the business they do in this state". The court said yes in response, but limited the scope of the interrogatories to the jurisdictional issue.

As in the Gray case, we again set forth excerpts from the opinion which we believe reflect not only the reasoning of the court, but also the conclusions reached. The court, l. c. 892, quoted with approval the following from Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, 676:

"\* \* \* 'Defendant's main contention is that the amended sections deny him due process of law, and so violate the fourteenth amendment to the constitution of the United States and section 2 of article II of the constitution of Illinois, S. H.A. Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, was decided in 1878, significant social, technological, and legal developments have occurred. Rigid concepts have yielded to fiction, and fiction has yielded to forthright and realistic considerations of fairness in the determination of what constitutes jurisdiction to determine personal rights. \* \* \*' "

The court then quoted, again with approval, from the Gray Case, l. c. 766:

"\* \* \* 'As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communication have removed much of the difficulty and in-

convenience formerly encountered in defending lawsuits brought in other States.' "

Speaking for itself, the court finally concluded:

" * * * Without repeating the allegations of the petition, it is adequate for us to declare that they are, if true, sufficient to establish the jurisdiction of the trial court to proceed."

We believe we can properly say in effect what the Supreme Court of Illinois, 1. c. 767, said in the Gray case, with respect to contra-authorities from other jurisdictions, and we quote that court directly:

"We are aware of decisions, cited by defendant, wherein the opposite result was reached on somewhat similar factual situations. (Citing cases.) * * * we think the better rule supports jurisdiction in cases of the present kind. We conclude accordingly that defendant's association with this State is sufficient to support the exercise of jurisdiction.

"We construe section 17(1) (b) as providing for jurisdiction under the circumstances shown in this case, and we hold that as so construed the statute does not violate due process of law."

The contentions of Relator have been carefully considered many times by many courts. The trend has gradually, but nevertheless consistently, moved away from such interpretations. Our own Supreme Court in the Pinnell case squarely approved and adopted the reasoning and conclusions reached by the Illinois courts in Miller and Gray. These two Illinois decisions were interpreting a statute from which ours had been copied. They ruled the jurisdictional question adversely to Relator's position. The Supreme Court of Missouri handed down the Pinnell case opinion on June 8, 1970. We are of course bound to conform. We want it clearly understood that this opinion is not declaring that prohibition is a proper method for determining if a petition does or does not state a cause of action on the merits. We

are only ruling that the allegations of this particular petition are sufficient to invoke jurisdiction under the long-arm statute, authorize the service therein provided for, and is not in violation of the due-process clause.

Our preliminary writ heretofore issued is therefore vacated and quashed.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.