**STATE of Missouri ex rel. APCO OIL CORPORATION, Relator,**

v.

**The Honorable William M. TURPIN, Judge of the Circuit Court of the County of St. Charles, Missouri, presiding in Division I of said Court and his successors as Judges of said Division, Respondent.**

**No. 34692.**

Missouri Court of Appeals, St. Louis District, Division Two.

Jan. 9, 1973.

**402**

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Parks G. Carpenter and William L. Davis, St. Louis, for relator.

Niedner, Moerschel, Nack & Ahlheim, Rollin J. Moerschel, St. Charles, for respondent.

SIMEONE, Judge.

This original proceeding in mandamus presents a unique facet of the Missouri "long arm statute."[1] The issues are: (1) when a Missouri consumer sues for damages for an allegedly defective product against a Missouri dealer, may the dealer bring a third party action against the manufacturer, a foreign corporation which is allegedly ultimately liable for the defective product, on the ground that the manufacturer committed a "tortious act within this state" although the tort is allegedly committed upon the consumer and not the dealer, and (2) may the dealer compel the third party action by extraordinary remedy of mandamus.

For the reasons hereinafter stated we hold that a foreign corporation which manufactures a product for use in Missouri is subject to extraterritorial jurisdiction on the ground that a tortious act is committed "within this state" when the dealer seeks indemnification from the manufacturer by way of impleader. We further hold that mandamus is the appropriate remedy to compel the impleader of such manufacturer. Our alternative writ heretofore issued is therefore made peremptory.

On August 9, 1971, relator Apco Oil Corporation, third party plaintiff, a corporation licensed to do business in Missouri, filed a petition against General Woodcraft, Inc., a corporation organized under the laws of Missouri, to recover $4,290.66 for certain goods sold at the request of General Woodcraft. In due time General Woodcraft answered, averring that the "plaintiff . . . had numerous dealings" with General Woodcraft and Apco knew General Woodcraft used the goods (MEK Perox-

1. § 506.500, RSMo, 1969, V.A.M.S., provides: "1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state; . . .
2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."
§ 506.510 provides for the method of service of process upon a nonresident person or corporation.

ide) in the making of its products. The answer further averred that Apco "expressly and impliedly warranted" to General Woodcraft that the product was of the "highest quality" and it would fit the needs of General Woodcraft but the product did not "so perform," causing ". . . ruination and spoliation of large quantities of raw materials . . . all to defendant's [General Woodcraft's] damage." General Woodcraft also filed a counterclaim alleging that Apco expressly and impliedly warranted that the product would fit the "needs, specifications and use of defendant for which it was intended" but the product did not so perform as warranted, thus causing damage.

When the counterclaim was interposed by General Woodcraft, the counter-defendant Apco filed a motion in accordance with Rule 52.10 [2] for leave to file a third party petition on Noury Chemical Corporation (hereinafter Noury), a New York corporation whose principal place of business is located in Burt, New York. Apco sought to have summons issued for service of process upon it "pursuant to R.S.Mo. 506.500 and 506.510." As grounds for this motion Apco pleaded that Noury "is liable" for all of the claims asserted against it by General Woodcraft and Noury committed a ". . . tortious act in the State of Missouri within the meaning of R.S.Mo. 506.-500, . . ." The third party petition filed by Apco alleged that: (1) General Woodcraft ". . . seeks to recover damages against [Apco] . . . as the result of the sale by [Apco] . . . to [General Woodcraft]"; (2) the product was allegedly unfit, not in accordance with specifications; (3) the product was "resold unchanged" to General Woodcraft; (4) the product was manufactured and sold to Apco ". . . with the intention and knowledge that said substance would be used in Missouri by a customer of [Apco]"; and (5) Noury ". . . arranged shipment of the product to the State of Missouri with the knowledge and

intention that it be so used," and warranted that the product was "fit and merchantable" and "met the specifications." The petition concluded that if Apco be liable to General Woodcraft, then its liability would result only from the ". . . unfitness, unmerchantability, or variation from specifications of the product . . .", amounting to a breach of warranty and negligence by Noury for which Noury is "strictly liable in tort". Should General Woodcraft recover against Apco, then Apco prayed judgment against the third party defendant Noury.

Respondent judge exercised his discretion and entered an order allowing summons to be issued against Noury pursuant to the third party petition. In due time Noury entered its special appearance, filed its motion attacking the jurisdiction of the court, and moved to quash the summons and dismiss the third party petition. Noury alleged that it is not authorized to do business in Missouri, has no registered office or agent here and did not enter into any contract in Missouri. It also alleged that a tort was not committed by it and it has not committed any other act which would bring it within the purview of § 506.500. On May 19, 1972, respondent judge, upon a hearing of the motion to quash summons, granted the motion.

On June 1, 1972, Apco filed its petition for an alternative writ of mandamus seeking to direct the respondent judge to set aside the order of May 19, 1972, and ". . . hold for naught its order quashing the service of summons on Noury Chemical Company and further compelling respondent to reinstate the service of process and summons directed to Noury Chemical Company . . ." We issued our alternative writ on July 19, 1972. Mo.Const., Article V, § 4, V.A.M.S.

Relator Apco contends that the state of Missouri, acting through its courts, has jurisdiction over a foreign corporation in a

---

2. Rule 52.10 is now Rule 52.11, V.A.M.R.

third party action for indemnity when it is alleged that a defective product was manufactured by the foreign corporation for shipment to and distribution in Missouri.

Respondent on the other hand vigorously contends that the courts of Missouri do not have jurisdiction *in personam* over a third party defendant foreign corporation when the third party petition alleges that the product was sold and shipped to Apco in Missouri with the intention that the product would be used in Missouri by a customer of Apco and not by its buyer, Apco, for the reason that there is no allegation showing any "tortious act" was committed upon Apco by Noury. The respondent also contends that General Woodcraft did not choose to sue Noury for the alleged defective product and hence no tort is pleaded by Apco as being committed by Noury on Apco, although there may be a tort committed upon General Woodcraft. The gist of the respondent's contention is that Apco is attempting to use an alleged tort against General Woodcraft as the basis for acquiring extraterritorial jurisdiction of Noury and that no tort was committed by Noury upon Apco. If tort there were, it was committed upon General Woodcraft and not Apco and hence the petition does not allege any tortious act so as to come within the purview of the "long arm statute." Or to use the respondent's quaint phrase, "Apco Oil is . . . 'untorted by Noury Chemical' ".

The respondent further contends that the "long arm statute" cannot be used in an indemnity situation since "Only causes of action arising from acts enumerated in this section may be asserted against a defendant . . . " § 506.500, subsection 2.

■ Extraterritorial jurisdiction over natural persons and foreign corporations has had a long and checkered history from Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 to International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 and State ex rel. Deere & Co. v. Pinnell, Mo., 454 S.W.2d 889, which upheld the constitutionality of our statute. See Comment, 16 St. Louis U.L.J. 315. Since the days of *Pennoyer* in the last century, great social, scientific and sociological changes have been made. We are truly a different society. State lines do not have the same significance they once did insofar as service of process is concerned. "Rigid concepts have yielded to fiction, and fiction has yielded to forthright and realistic considerations of fairness in the determination of what constitutes jurisdiction to determine personal rights." *Deere*, supra, at 892, quoting from Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, 676. In McGee v. International Life Ins. Co., 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226, the Supreme Court of the United States stated: "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." Today, ". . . due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.,* supra, 66 S.Ct. at 158, quoted in *Deere,* supra, at 893. Today there are only two requirements to acquire jurisdiction over one not served with process within the state: (1) that there be certain minimum contacts with the state, and (2) there is a reasonable method of notification given.

Relator relies on State ex rel. Birdsboro Corp. v. Kimberlin, Mo.App., 461 S.W.2d 292 and *Deere,* supra. In *Birdsboro* the Clinton County Reorganized School District of Cameron, Missouri, brought suit for damages against Mirawal Division, Birdsboro Corporation, Frankkiser & Hutchens, architects, Ceco Corporation, a subcontractor, and F. P. Gehring, Inc., the general contractor, because certain panels were defectively constructed and improperly installed in a new school building in the

district. Birdsboro, a Pennsylvania corporation, sought prohibition against respondent to prohibit him from denying its motion to quash service. The motion alleged that it was not authorized to do business in Missouri, had not transacted any business here and the cause of action did not arise from any contract made in Missouri. In support of its petition for prohibition relator stated that the plaintiff's petition did not allege a "tortious act," the basis of the plaintiff's claim. However, the Kansas City District quashed the writ and held that the foreign corporation was subject to jurisdiction in Missouri under the "tortious act" provision of § 506.500 where there were allegations of negligent manufacture in Pennsylvania and a sale of the panels to Ceco, an Illinois company, for shipment and use in Missouri. The facts indicate that the panels which were to be purchased by Ceco from Birdsboro had certain specifications. This was a defective product case, unlike the multitude of cases involving personal injury.

The third party petition in this proceeding alleged in effect a breach of warranty in that the product was unfit for use in the manufacturing process of General Woodcraft, that the product was not in accordance with specifications, and also alleged negligence on the part of Noury in compounding and manufacturing the allegedly defective product for which Noury is "strictly liable in tort."

■ Since our Supreme Court decided Keener v. Dayton Elec. Mfg. Co., Mo., 445 S.W.2d 362, it has been held that ". . . liability in products liability cases is no longer 'governed by the law of contract warranties but by the law of strict liability in tort.' Greenman v. Yuba Power Products, Inc., supra [59 Cal.2d 57, 27 Cal.Rptr. 697], 377 P.2d 897, 901; 2 Restatement, supra, § 402A, p. 355. This is a tort action . . ." Keener, supra, at 364–365. See Smith v. Old Warson Development Co., Mo., 479 S.W.2d 795. A products liability case is now considered to be

tortious and any recovery is really in tort. See Products Liability—Then and Now, 26 J. of Mo.Bar 504.

■ By making the allegations in its third party petition that it was entitled to indemnity from Noury for any defects in the products sold to it for resale to General Woodcraft, relator stated sufficient facts, which for the purposes of the motion are assumed to be true, showing that a "tortious act" was committed "within this state" and that the cause of action asserted by Apco arose from the commission of that tort. The third party petition alleged both a breach of warranty and negligence by Noury in manufacturing a product which was defective. In Birdsboro there were also allegations of negligent manufacture and the court held that in such instance when the products were for use in Missouri, the foreign corporation could be subjected to jurisdiction under the tortious act provision of the "long arm statute." Relator further alleged that the product was defective and would be used in Missouri by a customer and that it was entitled to indemnification. Apco has alleged sufficient facts to show that the cause of action arose from the commission of a tortious act within this state.

It is really immaterial for the purposes of the "long arm statute" whether the tortious act is deemed committed against General Woodcraft or Apco for the reason that the statute authorizes extraterritorial service whenever a tortious act is committed "within this state" and the cause of action arises from its commission.

■ In any event, a tort is alleged by Apco to have been committed in this state for which Apco may be liable but for which it may be entitled to indemnity against Noury. To assert a claim against a person who may ultimately be liable is the purpose and reason for third party practice. The purpose of this procedure is to avoid two actions which should be tried together to save the time and cost of redu-

plication of evidence and to obtain consistent results from similar evidence. Hipp v. Kansas City Public Service Co., 241 Mo. App. 169, 237 S.W.2d 928. This procedure is available in indemnity situations. State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W.2d 481. It has further been said that the purpose is to accomplish ultimate justice for all concerned with economy of litigation. State ex rel. McClure v. Dinwiddie, 358 Mo. 15, 213 S.W.2d 127, 129; State ex rel. Laclede Gas Co. v. Godfrey, Mo.App., 468 S.W.2d 693, 698.

■ It is not unjust to subject a nonresident corporation to jurisdiction of the courts of Missouri when such corporation may be responsible for indemnity for a product used in Missouri by a Missouri consumer. ". . . As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communication have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits brought in other States." Birdsboro, supra, 461 S.W.2d at 297–298, quoting from Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761.

The view that Apco may maintain a third party claim and serve summons upon a foreign corporation which is allegedly liable for any damages that might be suffered by Apco is buttressed by Bolf v. Wise, 119 Ill.App.2d 203, 255 N.E.2d 511. In that case the plaintiff Bolf filed a claim against Wise for injuries allegedly sustained when an overhead door of a catering truck fell on him. Wise answered and filed a third party claim against a California corporation stating that it was the manufacturer and seller of the truck and he was entitled to indemnity from that corporation on the basis of its negligence or breach of warranties or under the theory of strict liability. The California company entered a special appearance and filed a motion to strike the third party complaint, just as Noury did here. The third party complaint alleged that the California corporation sold the truck knowing it was to be used by Wise in Illinois. The Supreme Court of Illinois denied the motion to dismiss the third party complaint and held that: "If an injury is suffered from a product, which was sold or *used* within the state, and such sale or use generates gross income for the manufacturer, and the generation of such income is not so fortuitous or unforeseeable as to negative the existence of an intent on the manufacturer's part to bring about such a result, then a manufacturer has engaged in economic activity sufficient to justify the imposition of jurisdiction over it." (Emphasis added.) *Bolf,* supra, 255 N.E.2d at 513.

It is true that the allegation in *Bolf* was that the product was sold by the nonresident knowing it would be used by Wise, and here the allegation is that the product "would be used in Missouri by a customer of third party plaintiff [Apco]." But we believe that this difference is not significant. The fact is that the product was sold to Apco in Missouri and was "to be used in Missouri." That is a sufficient contact within this state so as to subject Noury to jurisdiction.[3]

■ In summary, this case is one which falls within the authority of § 506.-500, our "long arm statute." That statute authorizes extraterritorial service subjecting a nonresident to the jurisdiction of the

---

3. See Adams Dairy Co. v. National Dairy Products Corp., W.D.Mo., 293 F.Supp 1164. While that decision interpreted the Federal Rules of Civil Procedure, the clear implication of the decision is that the "long arm statute" is applicable in a third party proceeding.

courts of this state ". . . as to *any cause of action arising from* . . . [*t*]*he commission of a tortious act within this state*; . . ." (Emphasis added.) There are only two requirements to satisfy this statute: (1) there must be a tort committed in Missouri, and (2) any cause of action must arise from the commission of the tort. In this case both of these requirements are satisfied. An alleged tort has been committed by Noury in Missouri and the cause of action for indemnity by Apco against Noury *arises* from the commission of the tort. There is no requirement in the statute, as contended by Noury, that the tort be committed upon the person bringing a cause of action (Apco). As long as the cause of action arises from the commission of the tortious act within this state it is sufficient. As such, Apco's claim is a cause of action arising from the tort and satisfies subsection 2 of § 506.500. Under the pleadings there is no question that a tortious act was allegedly committed in Missouri by Noury, hence it is subject to jurisdiction as to "any cause of action arising from" the commission of such tort. The indemnity action sought by Apco certainly is a cause of action *arising from* the commission of a tort. It is really of no significance as to what the cause of action is between Apco and Noury as long as that cause of action arises from the commission of a tortious act in Missouri. Hence, we believe that the requirements of the statute are satisfied in this case and Apco may obtain jurisdiction over Noury, the foreign corporation.

 Mandamus is an appropriate remedy. While it is true that the respondent had discretion to permit the filing of a third party petition, whether to allow or quash the service of process obtained pursuant to the third party petition was proper or not is not a matter of discretion. Respondent was without jurisdiction to quash service of process lawfully obtained. Hence, mandamus is a proper remedy to correct such lack of jurisdiction. State ex rel. Knight Oil Co. v. Vardeman, Mo., 409 S.W.2d 672[1, 2].

Therefore, since we believe that the requirements of § 506.500 have been satisfied in that Noury has committed a tortious act within this state and Apco's cause of action against Noury arises from the commission of such act, Apco's third party petition and service of summons upon the foreign corporation should not have been quashed by the trial court and was an improper exercise of discretion. The order of the trial court sustaining Noury's motion to quash summons is reversed. The alternative writ is made peremptory.

SMITH, P. J., and KELLY, J., concur.