JOHN J. DOOLIN, Plaintiff-Appellant, *v.* K-S TELEGAGE COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 78-43

Opinion filed July 16, 1979.

Jeffrey Dean Lewis, Ltd., of Chicago, for appellant.

Harlene G. Matyas, of The Law Offices of Thomas J. Keevers, of Chicago (Sidney Z. Zarasik, of counsel), for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff, John Doolin, appeals from an order of the circuit court of Cook County granting the motion of the defendants, K-S Telegage Company and David B. Lilly Company, to quash service of summons and to dismiss the plaintiff's amended complaint. The plaintiff contends that the defendants are subject to the *in personam* jurisdiction of the Illinois courts because of their commission of a tortious act in Illinois (Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(b)) and also maintains that sufficient minimum contacts existed as required by the due process clause to constitutionally justify jurisdiction.

The plaintiff filed an action against the K-S Telegage Company, a Delaware corporation, and the David B. Lilly Company, individually and as successor to Telegage, to recover for injuries suffered when a hand truck that he was operating collapsed. (Hereinafter both entities will be jointly referred to as Telegage.) Plaintiff's amended complaint alleged that Telegage maintained one or more offices in Illinois to carry on its business of "designing, manufacturing, and selling hand cars for sale and distribution throughout the United States * * *." It further alleged that, in the course of this business, Telegage did "design, manufacture, and sell to Bresler's Ice Cream Company, an Illinois corporation, a K-S-1, narrow aisle two wheel delivery hand truck." The complaint asserted liability on the basis that Telegage manufactured and sold the hand truck to Bresler's in an unreasonably dangerous condition in that the truck was not equipped with safety equipment to insure its stability. It was also alleged that the unreasonably dangerous condition of the truck proximately caused the injuries that Doolin sustained in Illinois while using the truck in the course of his employment with Bresler's.

Service of process was made upon defendants in Wilmington, Delaware. Telegage filed a special and limited appearance and moved to quash service of summons and to dismiss the plaintiff's amended complaint on the ground that there were insufficient contacts with the State of Illinois to subject Telegage to the *in personam* jurisdiction of the

Illinois courts. Telegage filed an affidavit in support of its motion to quash. The affidavit, sworn to by Charles Ashton III, a vice president of K-S Telegage, division of David B. Lilly Company, stated in pertinent part:

"4. That the K-S Telegage Co., which is a division of the David B. Lilly Company, Inc., maintains no offices, facilities, plants, or any other structure in the State of Illinois.

5. That the K-S Telegage Company, a division of David B. Lilly Company, Inc., maintains no agents, salesmen, personnel or any representatives within the State of Illinois.

6. That the K-S Telegage Company, a division of David B. Lilly Company, Inc., does not have any salesmen or agents or any other representatives or personnel who periodically come into the State of Illinois for transaction of business, nor does it maintain any such personnel to solicit business within the State of Illinois, nor has it ever so acted within the State of Illinois.

7. That the K-S Telegage Company, a division of David B. Lilly Company, Inc., does not execute any contracts or purchase orders within the State of Illinois.

8. That the K-S Telegage Company, a division of the David B. Lilly Company, Inc. does not negotiate any contracts within the State of Illinois.

9. That the K-S Telegage Company, a division of the David B. Lilly Company, Inc., does not have any distributorships within the State of Illinois.

10. That the K-S Telegage Company, a division of David B. Lilly Company, Inc., does not now, nor has it ever, engaged in the design or manufacture of any hand cars for sale and distribution, whether in the State of Illinois or anywhere in the United States.

11. That the K-S Telegage Company, a division of David B. Lilly Company, Inc., has never entered into or executed any contracts with Bresler's Ice Cream Company in the State of Illinois."

In response, the plaintiff filed a memorandum of law and two exhibits. The plaintiff did not, however, file a counteraffidavit. Exhibit A attached to the plaintiff's memorandum, appears to be a copy of a letter written by C. M. Ashton, to an Illinois corporation, Lincoln-Reilly, Inc., Elmhurst, Illinois, in response to an apparent request by Lincoln-Reilly for information and prices on Telegage's hand trucks. In the letter Ashton acknowledged he had included two brochures on "our KS Aluminum Delivery Trucks." The two brochures, the letter noted, included a complete description of Telegage's trucks. Exhibit B appears to be a two-page brochure illustrating and describing several models of K-S Telegage dollies or hand carts. The brochure directs orders to the K-S Telegage Company, P.O. Box 2285, Wilmington, De. 19899. Printed as part of the

descriptive copy is the statement that "Many of the largest dairies in the country are using K-S Dollies exclusively." Plaintiff, in his memorandum accompanying the exhibits, asserted that the defendants did not deny that it sold its products to Bresler's, that its product was sold in contemplation of ultimate use in Illinois, or that the accident occurred in Illinois. There was no hearing on the disputed jurisdictional facts nor was any additional evidence taken by the trial court.

On August 31, 1977, the trial court entered an order and pursuant to Telegage's motion, quashed summons and dismissed the plaintiff's amended complaint. On October 4, 1977, upon plaintiff's motion, the trial court amended its August 31, 1977, order *nunc pro tunc* to state its finding that: (1) the defendants did not transact business within the State pursuant to section 17(1)(a) (Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(a)); and that (2) the defendants had insufficient contacts to justify jurisdiction under section 17(1)(b). The modified order also stated that there was "no just reason to delay enforcement or appeal from this final order."

At this time the trial court at the plaintiff's request entered an order stating that the record on appeal should include three exhibits. Exhibit 3, apparently introduced by the plaintiff at the hearing on the motion to quash, appears to be a letter by C. M. Ashton to Peacock Business Press, Inc., a Park Ridge, Illinois, corporation, in which Ashton, in response to a phone inquiry by Peacock concerning hand trucks, stated that he was enclosing "our brochure describing the two (2) models of Aluminum Hand trucks that we produce for the Ice Cream Industry." On the bottom of this letter were printed the words: "We Also Design And Build Custom Specials."

The notice of appeal filed by plaintiff requested this court to vacate the trial court's order which quashed summons and dismissed the amended complaint. However, plaintiff's brief and reply brief and his remarks at oral argument are directed solely toward arguments that personal jurisdiction over the defendants was proper under 17(1)(b); no arguments are made concerning jurisdiction under 17(1)(a). An appellant who fails to argue an issue waives it, according to Supreme Court Rule 341(e)(7). Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7); *Wiedemann v. Cunard Line Limited* (1978), 63 Ill. App. 3d 1023, 380 N.E.2d 932.

We consider first the defendants' contention that the plaintiff's failure to file an affidavit controverting the facts contained in defendants' verified affidavit warranted the trial court's order quashing defendants' summons and dismissing plaintiff's amended complaint. As there was no hearing on the disputed jurisdictional facts and as no additional evidence was taken by the trial court, this court is called upon to examine the plaintiff's amended complaint and the defendants' affidavit. Our review of these

documents convinces this court that the defendants' argument is not well taken.

██ Illinois decisions recognize that a defendant may attack the court's jurisdiction over him by making a special and limited appearance and filing a motion to quash and dismiss the action. (*Farley v. Blackwood* (1978), 56 Ill. App. 3d 1040, 372 N.E.2d 921; *Hawes v. Hawes* (1970), 130 Ill. App. 2d 546, 263 N.E.2d 625.) A motion to dismiss for improper jurisdiction, premised as it is on a matter which does not appear on the face of the complaint, must be accompanied by a supporting affidavit. (Ill. Rev. Stat. 1977, ch. 110, par. 48(1); *Crowe v. Public Building Com.* (1977), 54 Ill. App. 3d 699, 370 N.E.2d 32; *Yale Development Co. v. Oak Park Trust & Savings Bank* (1975), 26 Ill. App. 3d 1015, 325 N.E.2d 418.) If the defendants' affidavit contesting jurisdiction is not refuted by a counteraffidavit filed by the plaintiff, the facts alleged in the affidavit are accepted as true. (*Loughman Cabinet Co. v. C. Iber & Sons, Inc.* (1977), 46 Ill. App. 3d 873, 361 N.E.2d 379.) However, the defendants' affidavit will be determinative of the motion only if it negates the facts upon which the plaintiff bases jurisdiction because otherwise, the defendant has not effectively controverted plaintiff's prima facie showing that the defendant has submitted to the jurisdiction of Illinois. *Continental Nut Co. v. Robert L. Berner Co.* (7th Cir. 1965), 345 F.2d 395.

In the present case, the plaintiff alleged liability against the defendants based on the *Suvada* doctrine of strict liability (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182), and jurisdiction upon the defendants' commission of a tort in Illinois under the Illinois long-arm statute. (Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(b).) The defendants contend that their affidavit denied every jurisdictional fact alleged by the plaintiff in his amended complaint. We do not agree. An examination of the defendants' affidavit discloses that the affidavit avoids any reference to certain facts material to the disposition of this case. The affidavit does deny the plaintiff's jurisdictional facts based on doing business in Illinois under section 17(1)(a) and also denies that Telegage designed or manufactured hand trucks. However, the affidavit did not go as far as the affidavit in *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761 or that approved by the court in *Continental Nut Co.*, because it did not deny every one of the plaintiff's jurisdictional allegations. Most particularly, the affidavit did not deny that defendants sold "Telegage" trucks throughout the United States, did not attempt to explain the defendants' affiliation or connection with the product as suggested by the plaintiff's exhibits A, B and C, leaves open the question as to whether a sale was in fact made by defendants to Bresler's or its agents as alleged in the complaint and how the truck came into

Illinois, that the truck was sold to Bresler's in an unreasonably dangerous condition, or that the tort occurred in Illinois. Accordingly, the affidavit was not sufficient to deny the grounds upon which plaintiff claimed jurisdiction.

The defendants rely upon *Continental Nut Co.* to support its position; that reliance, however, is misplaced. In that case, the plaintiff sued two parties for libel. Each defendant contested jurisdiction by filing a motion to dismiss with an affidavit attached. The plaintiff failed to file any counteraffidavits. On appeal, the Seventh Circuit sustained the dismissal of one of the defendants because it had denied that it was a part of the conspiracy which resulted in the publication of the alleged libel. However, the court reversed as to the other defendant because, although his affidavit was also unrefuted, the affidavit did not deny the plaintiff's basis for jurisdiction. The facts in this case are analogous to the facts involving the latter defendant. Accordingly, we do not find that the defendants' affidavit is dispositive of the motion to dismiss.

The main issue on appeal is whether the defendants were subject to the personal jurisdiction of the Illinois courts within the dictates of the due process clause. The plaintiff argues that Telegage is subject to the personal jurisdiction of the Illinois courts because it committed a "tortious act" within the meaning of section 17(1)(b) of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(b).) Telegage argues that it had insufficient contacts with Illinois to subject it to the jurisdiction of the Illinois courts and that it could not be held amenable to Illinois process because there was no showing that it "contemplated" use of the hand truck in this State.

■■ Section 17, known as the long-arm statute, provides for the exercise of *in personam* jurisdiction over nonresident defendants "to the extent permitted by the due process-clause." (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673; accord, *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155.) It provides in pertinent part:

"§17. Act submitting to jurisdiction—Process. (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State." Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(a)(b).

■■ Traditionally, jurisdiction was available only where the defendant was present within the territorial jurisdiction of the court because a court's jurisdiction was limited by the requirement that a State exercise physical

power over a defendant. (*Pennoyer v. Neff* (1877), 95 U.S. 714, 24 L. Ed. 565.) In *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, this rule was changed and the jurisdiction of courts greatly expanded. There, the court held that:

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154.

In construing the *International Shoe Co.* due process requirements, the court in *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673, recognized that a State has an interest in providing a forum to a citizen who has suffered injuries caused by persons who have substantial contacts within Illinois and have enjoyed the benefit and protection of the laws of Illinois. In *Nelson*, the court held that sufficient contacts with the State existed to justify jurisdiction where a nonresident defendant's agent, present within the State, committed a tortious act. Where a tort has been committed from outside the State, some difficulty exists in determining whether sufficient contacts exist with the State to warrant jurisdiction over the person of a defendant. A variety of State and Federal decisions have focused on interpreting the "minimum contacts" requirement within this context. *McBreen v. Beech Aircraft Corp.* (7th Cir. 1976), 543 F.2d 26; *Keckler v. Brookwood Country Club* (N.D. Ill. 1965), 248 F. Supp. 645; *Gray v. American Radiator & Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761; *Bolf v. Wise* (1970), 119 Ill. App. 2d 203, 255 N.E.2d 511.

In *Gray*, the leading case in this area, the court held that *in personam* jurisdiction could be asserted over an Ohio manufacturer who negligently manufactured and marketed a defective valve. The valve was later incorporated into a water heater by a Pennsylvania company and sold to an Illinois resident who was injured in Illinois when the heater exploded. No other contacts with the State existed. Titan, the Ohio manufacturer, argued that an out-of-State manufacturer could not be held subject to the court's jurisdiction merely because an accident occurred while his product was present within the State of Illinois. The court looked at whether Titan "engaged in some act or conduct by which he may be said to have invoked benefits and protections of the law of the forum" (22 Ill. 2d 432, 440), in order to determine whether sufficient contacts existed. As Titan did not argue that the use of the valve in Illinois was an isolated instance, the court inferred that its commercial transactions resulted in the substantial use and consumption of its products within the State and as such that Titan had enjoyed the benefits of Illinois law in the marketing of its product. The court explained that:

"[I]f a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." (22 Ill. 2d 432, 442.)

In so deciding, the court laid down a "contemplation test" by which to determine whether a defendant has benefitted from the laws of Illinois. Where the defendant contemplated or anticipated that his products would be placed in the national stream of commerce or sold for ultimate use in Illinois, the defendant would have benefitted from the law of Illinois. Consequently, it would not be unreasonable to require him to defend in Illinois.

The facts in *Gray* are analogous to those in the present case despite the fact that it involved a suit premised on negligence rather than strict liability. (*Keckler v. Brookwood Country Club* (N.D. Ill. 1965), 248 F. Supp. 645.) The defendants argue that sufficient contacts with Illinois were not shown because, among other things, the sale to Bresler's was not executed in Illinois and because Telegage did not maintain any offices or facilities or generally did business within the State. We disagree. Whether the type of activity conducted within the State is adequate depends upon the facts in the particular case not on any mechanical test. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 319, 90 L. Ed. 95, 66 S. Ct. 154; *Gray*, 22 Ill. 2d 432, 440; accord, *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155.) In the application of this flexible test, the relevant inquiry is whether the defendant has by some act or type of conduct benefitted from the law of Illinois. *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228; *International Shoe Co.*, 326 U.S. 310, 319, 90 L. Ed. 95, 104, 66 S. Ct. 154.

Here, the defendants did not deny that they sold a hand truck to Bresler's, an Illinois corporation, for its ultimate use in Illinois and that an injury resulted in Illinois as a result of an unreasonably dangerous condition in the truck or that this sale was an isolated sale. The contacts alleged in the complaint were greater than those present in *Gray*. There the court concluded that Titan's contacts were sufficient because it had indirectly benefitted from the law of the State. Here, Telegage allegedly marketed its products in Illinois, and therefore, directly received the benefits and protections of Illinois law. *Anderson v. Penncraft Tool Co.* (N.D. Ill. 1961), 200 F. Supp. 145; *Bolf v. Wise* (1970), 119 Ill. App. 2d 203, 255 N.E.2d 511.

■■ ■ The principles of due process support jurisdiction where certain "minimum contacts" exist and "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154.) The court in *Gray v. American Radiator & Sanitary*

*Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, explained that this was where it was convenient for the parties to settle their case and noted that technological advancements in transportation and communication have greatly reduced the inconvenience which once attended the defense of a suit brought in other States. Consequently, courts now find the imposition of jurisdiction reasonable where minimum contacts have been found, the injury occurred within Illinois, the law of Illinois governs, and potential witnesses are located within Illinois. (*Gray*; *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673; *Bolf.*) In the present case all of these factors are present. Accordingly, we conclude that *Gray* warrants the exercise of *in personam* jurisdiction over these defendants by the Illinois courts.

The defendants seek to avoid this result by asserting that the application of the *Gray* "contemplation test" differs where a distributor is involved rather than a manufacturer. This difference, defendants argue, is based on the fact that a manufacturer is more likely to anticipate the use of its product in a national market than a distributor or retailer who might only contemplate local or regional consumption of its product. Defendants cite the Washington case, *Oliver v. American Motors Corp.* (1967), 70 Wash. 2d 875, 425 P.2d 647, in support of this proposition. We find this reliance misplaced because the facts in *Oliver* are readily distinguishable from those in the case at hand.

In *Oliver*, plaintiffs, several Washington residents, sued an Oregon automobile dealer and American Motors Corporation for manufacturing and distributing an allegedly defective automobile. Plaintiffs sued under the long-arm statute of Washington, a statute virtually identical to the Illinois statute. The Washington high court affirmed the dismissal of the complaint as to the automobile dealer because the court felt that the dealer did not contemplate the use of the car in another State with a tortious result. The court in distinguishing *Gray* noted:

> "Though it may be just to infer minimal contacts as to a manufacturer who produces goods and puts them into the broad stream of interstate commerce as was done in *Gray v. American Radiator & Standard Sanitary Corp.*, *supra*, and as was done, in fact, in *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, *supra*; we believe that no such inference is warranted where there is a sale by an out-of-state retailer to his local customer, if nothing further appears by way of a purposeful act on his part or possession of information, which would in any way charge the retailer with knowledge that his transaction might have out-of-state consequences." 70 Wash. 2d 875, 889, 425 P.2d 647, 656.

The court went on to explain that:

> "To attach personal jurisdiction because thereafter the out-of-state purchaser brings the offending mechanism into this state and a

tortious consequence occurs is so slender and tenuous a thread upon which to hang the implication of submission to our jurisdiction, that in our judgment it does indeed offend 'traditional notions of fair play and substantial justice' within the contemplation of the due process clause." 70 Wash. 2d 875, 889, 425 P.2d 647, 656.

This case is factually distinguishable from *Oliver* because Telegage allegedly sold a finished product directly to an Illinois company for ultimate use by that company in Illinois. Bresler's was not a retailer of hand trucks, so Telegage could not have anticipated that the truck in question would be used anywhere but Illinois. Unlike the automobile dealer in *Oliver*, Telegage could not expect its product to be used locally. Moreover, the alleged contacts apparent in the present instance are far greater than those which existed in *Oliver*. There, the only contact that the defendant had with Washington was the fortuitous fact that the place of the injury occurred there; both the plaintiffs and the defendant were citizens of Oregon, and the sale itself was made in Oregon.

The defendants next urge that in order to show that they benefitted from the laws of Illinois as a distributor, the plaintiff must show a particular distribution volume or pattern. In support they cite *Gray* and *Keckler v. Brookwood Country Club* (N.D. Ill. 1965), 248 F. Supp. 645. In these cases, the manufacturers did not sell their products to Illinois consumers or even to Illinois distributors; rather, they sold their goods to parties who then placed the products into the stream of commerce. Therefore, it was necessary to find or infer that each defendant knew that it was placing its product into the national channels of commerce in order to find that the defendant-manufacturer did benefit from the law of Illinois in marketing its product. Such a showing was unnecessary here because Telegage, if it did sell the hand truck to the Illinois company, as alleged, knew it was for ultimate use in Illinois. As such it was reasonable to subject Telegage to the jurisdiction of the courts of Illinois, because Telegage, in marketing its product in Illinois, received the benefit and protection of the laws of Illinois.

For the foregoing reasons the order of the circuit court of Cook County quashing summons is reversed and the matter is remanded to the circuit court of Cook County to allow defendant to answer or otherwise plead.

*Judgment reversed; cause remanded to the circuit court of Cook County.*

GOLDBERG, P. J., and O'CONNOR, J., concur.