Jacob **NORTON**, Appellant,

v.

**RAILWAY EXPRESS AGENCY, INC.**

No. 17715.

United States Court of Appeals
Third Circuit.

Submitted May 20, 1969.

Decided July 9, 1969.

Leonard E. Price, Price, Bercik & Kernan, Oakdale, Pa. (Herbert J. Johnson, Jr., Evans, Johnson, Scarpitti, Bernard & Wittmann, Erie, Pa., on the brief), for appellant.

John A. Spaeder, Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, Pa., for appellee.

Before FREEDMAN, SEITZ and ALDISERT, Circuit Judges.

### OPINION OF THE COURT

ALDISERT, Circuit Judge.

This is a tort action sounding in negligence which is in the federal courts solely because of the diversity of citizenship of the litigants. It requires us to consider the familiar doctrines of reasonable care and *respondeat superior* as interpreted by the courts of Pennsylvania. The facts are not complicated.

The plaintiff-appellant worked as a handyman for a supper club in Erie, Pennsylvania. In response to a club order for food, the defendant-appellee Railway Express delivered a 226 pound barrel of meat to the premises. On arrival, the defendant's deliveryman was requested by the appellant to unload the cargo by way of a stairway leading to the cellar. It was decided that the barrel would be placed on a wheeled dolly or truck and lowered step by step to the delivery point in the cellar.

The appellant positioned himself on the steps and held the bottom of the barrel; the deliveryman held the top. Step by step the barrel was eased down the stairs toward the cellar. Something then occurred, described with exquisite imprecision by the participants [1] and culminating in the barrel's unscheduled rapid descent to a resting place on top of the plaintiff.

In support of his personal injuries claim against the defendant-employer, the plaintiff proffered the testimony of an expert witness on the subject of the methods customarily employed in the delivery of barreled cargo. The district court rejected the relevancy of this offer, and at the close of testimony, directed a verdict for the defendant on the alternative grounds that no negligence had been established or that the plaintiff had been contributorily negligent as a matter of law.

We might have agreed with the result reached by the court below had the sole question of negligence been limited to the conduct of the participants in the unloading episode. Considered from this constricted viewpoint, the result could have been justified on the ground that the plaintiff failed to delineate any particular act amounting to a breach of care on the defendant's part. Present and germane to this case, however, was a broader concept of negligence: the method chosen to lower the barrel, as distinguished from the role the participants played in the misadventure, may have been a breach of the ordinary care owed by the defendant to its customers. Inherent in the grant of the directed

---

1. Plaintiff testified that he did not know what caused the barrel to slip off the truck, and that he did not know what Mr. Vella (the deliveryman) did that caused it to slip off. The deliveryman testified that plaintiff "helped me take it off the two wheel truck at the top of the entrance * * *. He got on the bottom like he told me he would, and I go on the top steadying it. Then we pushed it down." He then said they got it down three steps and when asked what happened, he replied, "I do not know." And the barrel got away.

verdict was the unwarranted assumption that the choice of the method of delivery did not in itself present a separate and distinct issue of negligence. With proper supervision and instructions from the trial judge, it would be appropriate for the jury to consider whether the method used was itself a breach of care and the proximate cause of the injuries to the plaintiff.[2]

■ In this respect, the proffered testimony of the customary manner of delivering barreled cargo would be relevant. Although not controlling, custom and practice may be shown to establish the standard of care to which the party charged with the wrongful act may be required to conform. Accepted with the limitation that such evidence is only an indication of reasonable conduct, and mindful of Mr. Justice Holmes' admonition that "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard or ordinary prudence, whether it is complied with or not," [3] testimony on the customarily accepted method of lowering barrels of this size and bulk could have been received in evidence. Upon retrial, with a proper offer on the particularities of the testimony and with due consideration for the degree of expertise characterizing it, it may be that such testimony should be admitted.[4]

The final question raised on this appeal is whether the evidence was sufficient for a jury to find that the appellee's deliveryman was acting within the scope of his employment in delivering the barrel by way of the cellar stairs. The appellee urges that the employee was instructed not to make cellar deliveries, that he attempted to do so solely at the insistence of the appellant, and that therefore no liability could attach from the doctrine of *respondeat superior* because the act of delivery was wholly outside the scope of the employment.

■ There is no question that under the law of Pennsylvania, the scope of the authority or employment of an agent or servant is a factual issue for jury determination.[5] That the servant may have deviated from the literal instructions of the master does not necessarily relieve the master of liability for these acts.[6] The master is still responsible if the performance occurs in the course of the employment with a view towards furthering the business of the master, and not with a purpose personal to the employee. We conclude there was sufficient evidence from which a jury might reasonably infer that the acts complained of were within the scope of the servant's employment.

Accordingly, the judgment of the district court will be reversed and the case remanded for a new trial.

2. Conversely, whether we view plaintiff's conduct from the constricted or broader concept of negligence, we do not accept the trial court's conclusion that there was contributory negligence as a matter of law. We construe the evidence adduced at trial to have presented a jury question. A jury might not hold a handyman to the same knowledge of the proper way to handle a barrel as it would a professional deliveryman. See Moodie v. Westinghouse Elec. Corp., 367 Pa. 493, 80 A.2d 734 (1951).

3. Texas & Pacific Ry. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905 (1903). See also Speyer, Inc. v. Humble Oil and Refining Co., 403 F.2d 766, 770 (3 Cir. 1968).

4. "The principle to be distilled from the cases is plain: if experience or training enables a proffered expert witness to form an opinion which would aid the jury, in the absence of some countervailing consideration, his testimony will be received." United States v. 60.14 Acres of Land, etc., 362 F.2d 660, 667 (3 Cir. 1966).

5. See, e. g., Anzenberger v. Nickols, 413 Pa. 543, 198 A.2d 309, 311 (1964); Pillo v. Jim Banes Ford, Inc., 410 Pa. 417, 189 A.2d 850 (1963).

6. Anzenberger v. Nickols, *supra*.