R. H. FULTON d/b/a R. H. Fulton,
Contractor, Plaintiff-Appellant,

v.

CHICAGO, ROCK ISLAND AND PACIF-
IC RAILROAD COMPANY, De-
fendant-Appellant-Appellee,

and

Soo Line Railroad Company, Defendant-
Appellee (two cases).

Nos. 72-1344, 72-1376.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1973.

Decided April 27, 1973.

Rehearing and Rehearing En Banc
Denied June 4, 1973.

328

George C. Chapman, Dallas, Tex., for Fulton, etc.

Wendell E. Koerner, Jr., St. Joseph, Mo., for Soo Line.

Thad C. McCanse, Kansas City, Mo., for Chicago, Rock Island & Pacific R. R. Co.

Before MATTHES, Chief Judge, and ROSS and STEPHENSON, Circuit Judges.

MATTHES, Chief Judge.

This case stems from the damages accruing to the shipper, R. H. Fulton, from the derailment of a train transporting his equipment. Fulton appeals from the judgment entered upon jury verdicts for

the originating carrier, Soo Line Railroad [Soo] and a connecting carrier, Chicago, Rock Island & Pacific Railroad [Rock Island]. Rock Island has also appealed from the judgment entered upon a jury verdict for Fulton on Rock Island's counterclaim.

Fulton is a pipeline contractor who, upon completing a job in Minnesota, contracted with Soo to transport his equipment from Thief River Falls, Minnesota, to the Southwest. Flat cars were diverted to a siding where Fulton's employees, under the supervision of Soo's inspector, loaded the equipment onto the cars and secured it for transit. It was and is a hotly contested question whether Soo's employee was an active supervisor or passive inspector. Also during the loading, a safety bolt was omitted from the counterweight rack despite a warning plate on the machine that the bolts should be inserted before transporting the machine. According to controverted evidence, this could have allowed the rack to drift out in transit. However, it was also hotly contested whether this caused the accident, or whether the cause was loose cabling of the equipment allowing the entire machine to shift.

After Soo's inspection "bad ordered" two cars for loose cabling, the other eight departed Thief River Falls. At Minneapolis, Soo connected with a non-party carrier, the Minneapolis, Northfield and Southern Railway, which transported the cars to a connection with Rock Island at Northfield, Minnesota.

Rock Island was to transport the cars to a connection with the terminating carrier, the Southern Pacific, but, unbeknownst to the crew, one of the cars carrying Fulton's equipment struck the

Mill Grove Bridge near the terminal point at Trenton, Missouri. After a rollby inspection at night at Trenton resulted in no discovery of anything amiss, a new Rock Island crew departed Trenton, but after a few miles a machine on the third of Fulton's cars struck Bridge 4194 causing the derailment and the collapse of the bridge.

Fulton then filed this suit [1] against Rock Island [2] and filed an amended complaint also naming Soo. The complaint laid two counts against each carrier, one under the Carmack Amendment, 49 U.S.C. § 20(11), and one in common law negligence. Rock Island counterclaimed for the damages to its bridge.

Soo initially moved to quash service, contending Fulton's attempt to effect service through the Missouri long arm statute was ineffectual to confer personal jurisdiction over Soo in this cause. After a hearing at which Fulton showed Soo's activity in the loading, the court denied the motion and held the service conferred jurisdiction. Fulton v. Southern Pac. Co., 320 F.Supp. 45 (W.D.Mo. 1970). However, when the cause was submitted, the court declined to submit the Carmack Claim against Soo, apparently on the theory that the long arm service was adequate only as to the negligence count.

The primary issue of fact litigated at trial was the cause of the accident. While Fulton did not deny that the safety bolt was omitted, it contended the counterweight nevertheless would not drift and that the cause of the accident was faulty cabling pursuant to Soo's instructions allowing the load to shift and the failure of Rock Island to observe these errors upon inspection. Alternatively, Fulton contended Soo was responsible for the loading and thus was re-

---

1. The suit was filed at Fulton's place of residence, the Lubbock Division of the Northern District of Texas, but, upon Rock Island's motion, the cause was transferred pursuant to 28 U.S.C. § 1404 to the court closest to the scene of the accident, the St. Joseph Division of the Western District of Missouri. After Soo was named as a defendant, it sought to transfer the cause to the District of Minnesota, but that motion was denied.

2. The complaint by Fulton also named Southern Pacific as a defendant, but Southern was subsequently dismissed from the case.

sponsible for the omission of the safety bolt, and that Rock Island was contributorily negligent in not observing the missing bolt and not taking ordinary precautions for a wide load which would have revealed the counterweight had drifted. The carriers, of course, insisted Fulton was at fault for omitting the safety bolt, that they had conducted their inspections with ordinary care, and that the drifting counterweight caused the accident.

After a five week trial, the case went to the jury. After one day's deliberation, the jury requested and received further explanation of the verdict form allowing them to find for Rock Island on Fulton's claim and for Fulton on Rock Island's counterclaim. Neither party had previously objected to this verdict form as inconsistent and neither objected to it at this time. Shortly thereafter the jury returned a verdict for Soo on the single limited negligence count submitted to them as to Soo and announced they were deadlocked on the Fulton-Rock Island claims. The court thereupon charged them to try again to reach a verdict and, after further deliberation, the jury returned a verdict on the form they earlier sought to have explained. Consequently, Judge Duncan entered

judgment for Fulton on Rock Island's counterclaim and for the carriers on Fulton's claims. The court denied the posttrial motions by Fulton and Rock Island for judgment n. o. v. and by Fulton for a new trial, and these appeals followed.

### I. FULTON'S APPEAL AS TO SOO

As noted above, Fulton's amended complaints naming Soo as a defendant pleaded causes of action against Soo both under the Carmack Amendment and in common law negligence, but the trial court declined to submit the Carmack issue to the jury. While we are directed to no precise statement in the record that this ruling stemmed from a conclusion the court possessed *in personam* jurisdiction as to the negligence count but not as to the Carmack claim, that apparently was the court's decision because the only reason pressed by Soo to pretermit submission of the claim to the jury was its contention the court lacked *in personam* jurisdiction.[3] Indeed, since Soo clearly comes within the plain language of the Carmack Amendment even if it was not itself negligent,[4] personal jurisdiction is the only theory we can ascribe to support the ruling.

3. Soo raised the question of *in personam* jurisdiction by two motions to quash service and its answers to the second and third amended complaints. It also filed one set of Suggestions in Support of the *Motion to Quash*. None of these five filings distinguished between the Carmack count and the negligence count. As noted above, the district court denied the motion to quash, but nevertheless declined to submit the Carmack claim to the jury.

4. The Carmack Amendment, 49 U.S.C. § 20(11), when stripped of redundance, provides in pertinent part:
"Any common carrier . . . subject to the provisions of this chapter receiving property for transportation from . . . one State . . . to . . . another . . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier . . . to which such

property may be delivered or over whose line . . . such property may pass . . . and no . . . limtation of any character whatsoever shall exempt such common carrier . . . from the liability imposed; and any such common carrier . . . shall be liable . . . for the full actual loss, damage or injury to such property caused by it or by any such common carrier . . . to which such property may be delivered . . . notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or . . . tariff . . . ., and any such limitation . . . is declared to be unlawful and void: Provided however, . . . that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law. . . ."

Accordingly, we turn to that question.

Fulton made service pursuant to Rule 4(e), Fed.R.Civ.P., by utilizing the provisions of the Missouri long arm statute, § 506.500 V.A.M.S. That statute provides:

"506.500. Actions in which outstate service is authorized

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

(5) The contracting to insure any person, property or risk located within this state at the time of contracting.

2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

Soo contends that because it made and performed this contract outside Missouri and owns no Missouri trackage the only long arm provision possibly applicable to this case is § 506.500(1)(3): "The commission of a tortious act within this state [Missouri]." Soo then advances two alternative arguments why this subsection is also inapplicable.

First, Soo submits the language of the subsection limits its application to actions occurring within the boundaries of Missouri. Pointing out that its allegedly tortious conduct—loading the railcars —occurred in Minnesota, Soo concludes the provision is inapplicable.

Second, Soo aserts Fulton's common law negligence claim is preempted by the Carmack Amendment, leaving only his Carmack count as stating a viable claim. Soo then asserts the Carmack count rests on the interstate contract of carriage, that it therefore sounds in contract rather than tort, and therefore that § 506.500(1)(3) is inapplicable.

In addition, Soo contends that even if § 506.500 is not inapplicable by its own interpretation, the exercise of personal jurisdiction in this case would contravene due process because Soo does not have the required "minimum contacts" with Missouri. We shall discuss these seriatim.

■ First, Judge Duncan was clearly correct in holding that Missouri caselaw construes the phrase "commission of a tortious act within this state" to include extraterritorial acts producing actionable consequences in Missouri. Missouri ex rel. Deere & Co. v. Pinnell, 454 S.W. 2d 889 (Mo.Sup.Ct.1970) (en banc); Missouri ex rel. Apco Oil Co. v. Turpin, 490 S.W.2d 400 (Mo.App.1973). *Accord,* Buckley v. New York Post Corp., 373 F. 2d 175 (2nd Cir. 1967); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961); Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W.2d 824 (1963). *Contra,* Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 209 N.E. 2d 68, 78–81, cert. denied, sub nom, Estwing Mfg. Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). It is therefore irrelevant to the statute's applicability that Soo's overt activity was confined to Minnesota.

■ As to Soo's second alternative argument, we agree that the Carmack Amendment has preempted suits in specific negligence by holders of bills of lading against their carriers. American Synthetic Rubber Corp. v. Louisville & N. R. R. Co., 422 F.2d 462, 468 (6th Cir. 1970).

"Congress must be deemed to have determined that the rule laid down and the means provided to enforce it are sufficient and that no other regulation is necessary. Its power to regulate such commerce and all its instrumentalities is supreme; and, as that power has been exerted, state laws have no application. They cannot be applied in coincidence with, as complementary to or as in opposition to, federal enactments which disclose the intention of Congress to enter a field of regulation within its jurisdiction." Missouri Pac. R. R. Co. v. Porter, 273 U.S. 341, 345–346, 47 S.Ct. 383, 385, 71 L.Ed. 672 (1927).

*See especially* Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). *See also* New York, N. H. & H. R. R. Co. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953); Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936); Chicago & N. Ry. Co. v. C. C. Whitnack Produce Co., 258 U.S. 369, 42 S.Ct. 328, 66 L.Ed. 665 (1922); Atchison, T. & S. F. Ry. Co. v. Harold, 241 U.S. 371, 36 S.Ct. 665, 60 L.Ed. 1050 (1916); Atchison, T. & S. F. Ry. Co. v. Robinson, 233 U.S. 173, 34 S.Ct. 556, 58 L.Ed. 901 (1914); Boston & M. R. R. v. Hooker, 233 U.S. 97, 34 S. Ct. 526, 58 L.Ed. 868 (1914); W. D. Lawson & Co. v. Penn Central Co., 456 F.2d 419 (6th Cir. 1972). We regard the *Lawson* decision as squarely in point with this case on the preemption issue. *But see* Litvak Meat Co. v. Baker, 446 F.2d 329 (10th Cir. 1971).

"The cases make it clear that when damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage, the Carmack Amendment governs." American Synthetic Rubber Corp. v. Louisville & N. R. R. Co., *supra*, 422 F.2d at 466.

However, it does not follow as a consequence of finding Fulton's common law suit preempted that the remainder of Soo's second jurisdictional argument

is well taken. Indeed, there are two alternative and independent lines of reasoning yielding the conclusion that the Missouri long arm statute nevertheless applies to Fulton's Carmack claim.

■ First, contrary to Soo's contention, it is not necessary to characterize the Carmack claim as a cause of action in tort for the statute to apply. Concededly, § 506.500(1)(3) is limited to service upon one who has committed "tortious" conduct, and subsection (2) does limit service to a "cause of action arising from" that conduct; but it does not follow that the cause of action must sound in tort. The statute says it applies "to any cause of action arising from the doing of such acts" and the Missouri courts have construed that phrase literally.

In Missouri ex rel. Apco Oil Co. v. Turpin, *supra*, 490 S.W.2d 400 (Mo. App.1973), a retailer defending a products liability action brought a third party complaint against the manufacturer for indemnity and served process pursuant to § 506.500. The manufacturer sought to quash service on the grounds, *inter alia*, that while a consumer suit against it for the negligent manufacture would sound in tort, the suit for indemnity did not and therefore fell without the coverage of § 506.500(1)(3). The Missouri Court of Appeals, St. Louis Division, rejected this contention, Judge Simeone saying:

"It is really immaterial for the purposes of the 'long arm statute' whether the tortious act is deemed committed against General Woodcraft [the consumer] or Apco [the retailer] for the reason that the statute authorizes extraterritorial service whenever a tortious act is committed 'within this state' and the cause of action arises from its commission. . . . *It is really of no significance as to what the cause of action is* between Apco and Noury [the manufacturer] *as long as that cause of action arises' from the commission of a tortious act in Missouri.*"

490 S.W.2d at 405, 407 (emphasis supplied).

Clearly then the cause of action under Carmack need not be characterized as tort to come within § 506.500(1)(3) so long as it arises from "the commission of a tortious act." It is true, of course, that the preemption of common law claims against carriers makes the "tortious act" relied on here not actionable as a common law tort, but that is not a material problem. In view of the thrust of the *Apco* opinion, we think it sufficient that Soo's conduct gives rise to a cause of action in damages.

■ Furthermore, even if § 506.-500(1)(3) were applicable only if the cause of action sued on sounded in tort, we think it would apply to Fulton's Carmack claim because such a claim does indeed sound significantly in tort. It is of course true that the relationship between a shipper and carrier is initiated by the contract of carriage and it is equally true the relationship is highly analogous to bailment. But it is clear the liability of the carrier does not rest upon these factors. The duty of the carrier is erected by the statute, not by the contract, and the parties are not free to alter that duty by their contract. Thus, the liability arises not from breach of the contract but from breach of the statutory duty, and "[w]here a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of the duty is a tort." 52 Am.Jur. § 26 p. 379. *See also id.* at §§ 27–28.

■ Indeed, the nature of the carrier's duty under the Carmack Amendment sounds in negligence. The carrier's duty in the carriage of cargo is due care, *see e. g.,* Watson Bros. Transp. Co. v. Feinberg Kosher Sausage Co., 193 F.2d 283 (8th Cir. 1951); Seaboard Air Line R. R. Co. v. Lake Region Packing Assoc., 211 So.2d 25 (Fla.App.), cert. denied, 221 So.2d 748 (Fla.1968); it can-

not exculpate itself "from loss or responsibility due to negligence," Missouri, K. & T. Ry. Co. v. Harriman, 227 U.S. 657, 672, 33 S.Ct. 397, 401, 57 L.Ed. 690 (1913); the carrier bears a heavy burden of proof akin to res ipsa loquitur because it has peculiarly within its knowledge the facts which may relieve it of liability, Missouri Pac. R. R. Co. v. Elmore & Stahl, 377 U.S. 134, 143–144, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); Lux Art Van Serv., Inc. v. Pollard, 344 F.2d 883 (9th Cir.), cert. denied, 382 U. S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965), but it is liable under the statute only for damage "caused by" it and therefore can escape liability by proving the damage was due to an excepted cause and "that it was free from negligence. . . ." Missouri Pac. R. R. Co. v. Elmore & Stahl, *supra,* 377 U.S. at 138, 84 S.Ct. at 1145. Thus,

"[d]espite the divergent language in the various cases, it is clear that the duty therein sought to be imposed on the common carrier with respect to transportation and delivery of goods is based on the law of negligence." Seaboard Air Line R. R. Co. v. Lake Region Packing Assoc., *supra,* 211 So. 2d at 27–28.

*Accord,* United States v. Reading Co., 289 F.2d 7 (3rd Cir. 1961); Skulina, Liability of a Carrier for Loss and Damage to Interstate Shipments, 17 Cleve-Mar.L.Rev. 251, 255 (1968). *See* Watson Bros. Transp. Co. v. Feinberg Kosher Sausage Co., *supra.* Accordingly, a cause of action under the Carmack Amendment sounds in tort.

In sum, we hold, independently and alternatively, that for service under § 506.500(1)(3) to be effective it is not necessary that the cause of action pleaded sound in tort, and that even if it were, this Carmack cause of action would be covered because it sounds in tort. Therefore, the service here was statutorily authorized. We turn then to the question whether exercise of the ju-

risdiction conferred by that statute is constitutionally permissible in this case.[5]

The precise question now posed is the constitutionality of exercising personal jurisdiction over a foreign corporation whose only contact with the forum state is a single extraterritorial act causing actionable consequences within the forum state. The constitutional question, of course, is governed by the three leading Supreme Court cases, Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In *International Shoe* the Court broke with the past and laid down this now familiar rule,

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

326 U.S. at 316, 66 S.Ct. at 158. The Court also held the minimum contacts "criteria . . . cannot be simply mechanical or quantitive, . . . [but] must depend rather upon the quality and nature of the activity. . . ."

*Id.* at 319, 66 S.Ct. at 160. Accordingly, the Court said,

"the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation, . . . because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit."

*Id.* at 318, 66 S.Ct. at 159.

The Court followed this holding in *McGee,* where it approved service upon a nonresident insurance company whose only contact with the forum state was sending a form of reinsurance to, and receipt of premiums from, its one policyholder in the state whom it acquired when it absorbed his original insurer. Then in *Hanson,* the Court added a caveat:

"[I]t is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States."

357 U.S. at 251, 78 S.Ct. at 1238.

Taking these three cases together, we reject Soo's contention the exercise of

---

5. A third independent ground for finding the long-arm statute applicable here could be the view taken by the Sixth and Seventh Circuits of similar statutes. *See* Fisons Ltd. v. United States, 458 F.2d 1241 (7th Cir.), cert. denied, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972); Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968). In those cases, the courts dealt with the long-arm, statutes of Illinois and Tennessee, respectively, which are markedly similar to the Missouri statute *sub judice.* The courts of both those states had construed their statutes "to assert jurisdiction over nonresident defendants to the extent permitted by the" Constitution. 458 F.2d at 1250. Consequently, the federal courts held they should not view the statutes as merely erecting a few enumerated, inflexible circumstances in which service could be effected, but as establishing one broad flexible test, to wit: if the service satisfies the Constitution, it satisfies the statute. Since Missouri has likewise construed § 506.500 as intended to reach the constitutional limits, Missouri ex rel. Deere & Co. v. Pinnell, *supra,* we could also adopt this test and avoid "a pedantic quibbling with the wording of the statute," 401 F.2d at 378, making it unnecessary to ask whether only § 506.500 (1)(3) applies, whether it applies only to tort actions, whether a Carmack claim sounds in tort, etc. However, considering the answers to those questions given above, we find it unnecessary to take this expansive view of a state statute.

jurisdiction upon a "single act" is constitutionally impermissible.

"[I]t would not be difficult to extrapolate from the McGee decision and opinion a general principle that the due process clause imposes no bar to a state's asserting personal jurisdiction, of course on proper notice, in favor of a person within its borders who suffers damage from the breach of a contract the defendant was to perform there or a tort the defendant committed there. . . . [S]uch a doctrine would not seem to violate basic notions of fair play. . . . Indeed, when [as here,] the operative facts have occurred where the plaintiff sues, the convenience of both parties would often be served by a trial there. . . . Unfairness inconsistent with notions of fair play occurs only when a defendant is 'compelled to defend himself in a court of a State with which he has no relevant connection.' And inflicting harm within a state would appear to meet whatever further constitutional requirement may arise from [the] 'territorial limitations on the power of the respective States' [referred to in] Hanson v. Denckla." Buckley v. New York Post Corp., *supra*, 373 F.2d at 181 (Friendly, J.) (citations omitted).

*Accord*, Southern Machine Co. v. Mohasco Industries, Inc., *supra*; Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861, 865–868 (5th Cir. 1965); Missouri ex rel. Deere & Co. v. Pinnell, *supra*; Missouri ex rel. Birdsboro Corp. v. Kimberlin, 461 S.W.2d 292 (Mo.App. 1970). *Cf*. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927) (motorist's single act).

■ Bearing in mind the injunction of *International Shoe* that we judge the contacts qualitatively rather than quantitatively, we find no difficulty in holding Soo's role as initiating carrier provides the requisite minimum contacts. As initiating carrier, Soo knew the cargo would traverse Missouri and the derailment occurred there allegedly through Soo's negligence. Surely this provides a "relevant connection" with Missouri. Furthermore, the fairness of a Missouri forum is shown by the fact it is the situs of the accident. Indeed, the Texas District Court transferred the cause to Missouri pursuant to 28 U.S.C. § 1404 and the Missouri court then declined a similar transfer to Minnesota. The dual test of constitutionality is therefore met.

In sum, we find the district court had personal jurisdiction over Soo for the Carmack claim, the service of process being statutorily and constitutionally valid. It was therefore error not to submit that count to the jury. Accordingly, we reverse and remand for retrial of Fulton's Carmack claim against Soo. In view of the fact that all of Fulton's other assignments of error vis-a-vis Soo relate to the common law count now held preempted, we pretermit discussion of those contentions.

## II. FULTON'S APPEAL AS TO ROCK ISLAND

In pressing here his contentions that the district court should have granted either his posttrial motion for judgment on his Carmack claim against Rock Island, or alternatively, the motion for a new trial on his complaint, Fulton asserts, respectively, that the verdict entitles him to judgment and that the trial court erred repeatedly in its instructions and in excluding certain evidence. We shall review these contentions seriatim.

### A. *Judgment n. o. v.*

To comprehend Fulton's assertion that the verdict entitles him to judgment, one must first understand the respective elements of the negligence and Carmack claims submitted to the jury. Liability in common law negligence, of course, requires the plaintiff (Fulton) to show the defendant's conduct failed to conform to the standard of due care society expects a reasonable man to follow to avoid injury to others in the circumstances, and even if he fulfills this burden of proof his own contributory negligence will defeat the claim. Under the

Carmack Amendment, the burden of proof is drastically altered.

"[T]he shipper establishes his prima facie case when he shows delivery [to the carrier] in good condition, arrival in damaged condition, and the amount of the damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability . . . (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." Missouri Pac. R.R. Co. v. Elmore & Stahl, *supra*, 377 U.S. at 138, 137, 84 S.Ct. at 1144.

Here the only exception claimed was the act of the shipper in omitting the safety bolt.

█ Fulton's argument is that the jury's verdict for him on Rock Island's counterclaim constitutes a verdict either finding Fulton free of negligence or finding Rock Island guilty of contributory negligence and that either finding constitutes a jury conclusion that Rock Island failed its burden of proof on the Carmack claim. Accordingly, Fulton contends he is entitled to a judgment "upon the verdict." However, what Fulton actually seeks is judgment "notwithstanding" the jury's verdict against him on the Carmack claim, but he has not preserved his standing to make that motion because he failed to move for a directed verdict as *Rule 51* requires. Nor is it helpful to Fulton that the verdicts appear to be fatally inconsistent, because Fulton twice had an opportunity to object to the form allowing those verdicts and failed to do so. Indeed, we were informed at argument by counsel for Fulton that such an objection was consciously withheld. Accordingly, we hold that Fulton is not entitled to judgment n. o. v. on the Carmack claim and turn to his contentions for a new trial as to Rock Island, which are premised upon several assignments of error in the instructions and rulings on evidence.

### B. *Instructions*

█ Fulton first faults the instructions by assigning as error the court's charge "that there are but two . . . factual questions in this case with respect to what caused this derailment . . . whether . . . this counterweight rack extended out, or whether the load shifted." App. 1880. Fulton contends this statement is inaccurate, but we disagree. The statement was not part of the court's instructions on liability; it was merely part of the court's preambular comments delineating the issues. The court merely stated, quite accurately, that the evidence showed only two possible causes for the derailment, and proceeded also to state that there was no evidence the width of the load *per se* caused the accident. Thus, viewed in context, this portion of the instruction was not in error.

Fulton next assigns as error the two statements quoted in the margin.[6] He contends the effect of these instructions was to tell the jury (1) that a rollby inspection satisfies the carrier's duty of due care whereas Fulton contends that is a fact question for the jury, and (2) that the duty to inspect extends only to a load shift whereas Fulton contends it extends also to the counterweight drift. However, when the relevant portion of the instruction is read in its entirety, App. 1889–92, it is clear the portions assigned as error are merely excerpts taken out of context of an instruction which, viewed as a whole, accurately states the law.

█ Finally, Fulton asserts it was error to fail to itemize in the instructions a dozen or so specific acts of negligence by Rock Island which Fulton had

---

6. "[T]he carrier is only responsible for ordinary care in what they call a rollby inspection. . . . "

"If, of course, the load did not shift, then any question of inspection in that regard is out of this case."

tried to prove. We note first that the thrust of this contention is that this was a failure to instruct properly on his common law negligence claim. To that extent it is moot by our holding above that recovery in negligence is preempted by the Carmack Amendment. Second, we note that these alleged items of specific negligence contributing to the derailment would also be relevant to the Carmack claim because the carrier must prove its freedom from all contributing negligence. However, the plaintiff was allowed to offer evidence of these allegedly negligent acts and argue them to the jury as contributing causes, and the court did instruct the jury that "the burden is upon the company [Rock Island] to show that it is free of any negligence or that it has caused or contributed to cause the damages complained of by the shipper." Accordingly, we do not think it was prejudicial to the plaintiff that the court declined to lengthen the instructions by itemizing each act of negligence Fulton argued to the jury.

In sum, we find Fulton's contentions faulting the instructions as to Rock Island to have insufficient merit to warrant reversal. We therefore turn to his contentions that certain evidence was erroneously excluded.

### C. *Evidence*

The first item of evidence Fulton contends was erroneously excluded is the deposition testimony of three railroad executives concerning the multiplicity of precautions their lines take when transporting wide loads. Fulton's theory was that had Rock Island taken similar precautions because this was a wide load, it would have discovered the drifted counterweight or shifted load, that Rock Island's failure to take these precautions therefore constituted contributing negligence; hence this evidence was relevant to show the standard of care to which Rock Island should have adhered.

While custom is not conclusive of the standard of care, "[w]hat usually is done may be evidence of what ought to be done. . . ." Texas & P. Ry. Co.

v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905 (1903). Thus, this evidence was relevant, and could have been admitted at the discretion of the court. Colorado Milling & Elevator Co. v. Terminal R.R. Assoc., 350 F.2d 273, 277–278 (8th Cir. 1965), cert. denied, 382 U.S. 989, 86 S.Ct. 563, 15 L. Ed.2d 476 (1966); Weinberg v. Northern P. Ry. Co., 150 F.2d 645, 653 (8th Cir. 1945); Midland Valley R.R. Co. v. Bell, 242 F. 803, 807–808 (8th Cir.), cert. denied, 245 U.S. 653, 38 S.Ct. 12, 62 L.Ed. 532 (1917); Chicago G. W. Ry. Co. v. McDonough, 161 F. 657, 663–666 (8th Cir. 1908). *Accord,* Norton v. Railway Express Agency, 412 F.2d 112, 114 (3rd Cir. 1969); Wigmore, Evidence § 461 (3rd ed. 1940).

"[B]ut evidence of that character is not indispensable, for the ultimate and controlling test always is, not what has been the practice of others in like situations, but did the defendant in this case exercise reasonable or ordinary care. . . ." Midland Valley R. R. Co. v. Bell, *supra,* 242 F. at 808.

Accordingly, where, as here, similar evidence was admitted and the comparison of defendant's precautions with the custom of his competitors was argued to the jury, the exclusion of the evidence was not so prejudicially erroneous as to necessitate a new trial. Lowe v. Taylor Steel Products Co., 373 F.2d 65, 69 (8th Cir.), cert. denied, 389 U.S. 858, 88 S.Ct. 85, 19 L.Ed.2d 122 (1967).

The second item of evidence Fulton contends was erroneously excluded is his offer of the expert testimony of Paul Lilly that if cable clamps are placed on the short end of the cable rather than the long end they will slip. This evidence was excluded because there was no evidence the cables on the derailed cars were clamped on the wrong end. To rebut that ruling Fulton points to the testimony of John T. Bauer, at App. 1050–51, but he said only that the clamps were not spaced far enough apart. Fulton, also argues the destructive nature of the accident pre-

vented determination of how the clamps were affixed, but that hardly justifies the admission of speculation. The evidence was without proper foundation and thus was properly excluded.

■ The third item of evidence Fulton contends was erroneously excluded is his offer of testimony by Paul Lilly that Lilly obtained two pieces of cable, one from a derailed traincar and one from a derailed machine, and upon microscopic examination of those cables it was Lilly's expert opinion the cables broke not from the sudden force of the accident, but from being weakened by fraying action resulting from being too loose. This testimony was excluded because the cable was first seen by Lilly three years subsequent to the derailment and after the car and machine had been moved from Trenton to a railroad yard in Kansas City. Since no showing was made that these cables were used to secure Fulton's machinery on the ill-fated cars or, if so, that the cables were in the same condition when Lilly examined them as when the accident occurred, the testimony was properly excluded as immaterial. Sears, Roebuck & Co. v. Daniels, 299 F.2d 154, 160 (8th Cir. 1962).

■ Additionally, both excluded portions of Lilly's testimony were intended to show the cables were loose allowing the load to shift and this caused the accident; and Lilly was allowed to give his expert opinion that that was precisely what occurred. Accordingly, the excluded testimony was merely a subpart of an ultimate conclusion that was admitted, and its exclusion was, therefore, not reversibly prejudicial in any event.

■ The final items of evidence Fulton contends were erroneously excluded were photographs of the two railcars Soo's inspector Knutson, deleted from the shipment as improperly loaded, and the testimony of Clarence Tyree relating to Rock Island's actions in correcting the cabling on those cars. While the pictures might show the two deleted cars were faultily cabled, Soo recognized the improper loading at the same time it approved the other cars ultimately derailed. Accordingly, the inadequacy of these two cars does not infer the other eight were similarly inadequate. The evidence was therefore immaterial and properly excluded.

### III. ROCK ISLAND'S CLAIM OF ERROR

■ The sole contention pressed by Rock Island on its protective appeal from the adverse judgment on its counterclaim is that the court in its instructions erred in placing upon Rock Island the burden of proving its freedom from contributory negligence and should have given Rock Island's requested instruction placing upon Fulton the burden of proving Rock Island contributorily negligent. However, regardless of the substantive merits of this contention, Rock Island failed to object after the charge was delivered to this particular instruction and it is therefore precluded from raising this issue on appeal. Rule 51, Fed.R.Civ.P.

■ It is not enough that Rock Island had earlier filed a requested instruction placing the burden of proof on Fulton. The purpose of Rule 51 is to compel litigants to afford the trial court an opportunity to cure a defective instruction and to prevent litigants from insuring a new trial in the event of an adverse verdict by covertly relying on the error. Meitz v. Garrison, 413 F.2d 895, 899 (8th Cir. 1969); Chicago G. W. Ry. Co. v. Casura, 234 F.2d 441, 445 (8th Cir. 1956). Furthermore, a trial court need not give a requested instruction verbatim but may rephrase the rule of law it embodies so long as he adequately and accurately states the applicable law. Partlow v. Goldstein, 263 F.2d 169, 171 (8th Cir. 1959). It would therefore undermine the purpose of the Rule to allow a previous request for an instruction to obviate the need for a specific statement of the alleged error. Indeed, that would be contrary to the express command of Rule 51 that

"No party may assign as error the giving or *the failure to give* an instruction unless he objects thereto . . . stating distinctly the matter to which he objects and the grounds [for] his objection." (emphasis supplied).

Accordingly, we hold that compliance with Rule 51 is not afforded merely by filing before the charge an accurate requested instruction, but requires that there appear somewhere in the record an objection specifically delineating the objection and the grounds therefor. *See* Cone v. Beneficial Standard Life Ins. Co., 388 F.2d 456, 460–464 (8th Cir. 1968); Capital Transp. Co. v. Compton, 187 F.2d 844 (8th Cir. 1951).

### CONCLUSION

The judgment for Rock Island on Fulton's claim against Rock Island, and for Fulton on Rock Island's counterclaim is affirmed. The judgment in favor of Soo is vacated and the cause is remanded for another trial on Fulton's claim against Soo, in accordance with the views expressed in this opinion. The remand of the cause against Soo is, of course, without prejudice to Soo's right to file again a motion pursuant to 28 U.S.C. § 1404 to transfer the cause to the District of Minnesota.

Costs shall be taxed as follows: one-third each against Fulton, Rock Island and Soo.

### ON PETITION FOR REHEARING

### PER CURIAM.

Appellant Fulton has petitioned the Court for a rehearing, urging the Court's opinion is in error in three respects. Two of these assertions warrant no discussion.

■ The third contention is that this Court erred in pretermitting discussion of Fulton's assignment of error to the trial court's instruction relating to the respective responsibilities of the parties for the loading of the machinery onto the railcars. Fulton contends that, while the remand for a new trial as to Soo would allow the Court to pretermit

that question were Soo the lone defendant, if the instruction is erroneous to the degree asserted by Fulton it also affected the cause as to Rock Island by making less difficult Rock Island's burden under the Carmack Amendment of proving that Fulton's negligence was the sole cause of the derailment.

Upon examination of this instruction in its entirety and in context with the other instructions, we are persuaded that, while perhaps susceptible to improvement, it is a substantially correct statement of the applicable law. *See* Atchison, T. & S. F. Ry. v. United States, 232 U.S. 199, 216–217, 34 S.Ct. 291, 58 L.Ed. 568 (1913); United States v. Savage Truck Lines, Inc., 209 F.2d 442, 444 (4th Cir. 1953); 13 Am.Jur.2d Carriers § 319 (1964); 14 Am.Jur.2d Carriers §§ 528–32 (1964). We therefore decline to reverse the judgment as to Rock Island. However, this conclusion in no way precludes Fulton from urging at the new trial against Soo such modifications as he may deem appropriate and as are consistent with the authorities cited above.

The petition for rehearing is denied.